# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION AT COLUMBUS

GASUMU KAMARA,

              Petitioner,         :    Case No. 2:21-cv-2029

    - vs -                         Chief Judge Algenon L. Marbley
                                        Magistrate Judge Michael R. Merz

WARDEN,
  London Correctional Institution,

                              :

          Respondent.

---

# SUBSTITUTED REPORT AND RECOMMENDATION

This habeas corpus case, brought *pro se* by Petitioner Gasumu Kamara, is before the Court for decision on the merits. Relevant pleadings are the Petition (ECF No. 1), the [amended] State Court Record (ECF No. 27), the [amended] Return of Writ (ECF No. 28), and Petitioner's Traverse (ECF No. 32). On Petitioner's motion, proceedings were stayed to permit exhaustion of his delayed appeal in the Ohio courts (ECF No. 17).

After the stay was dissolved, Respondent was ordered to file an amended return of writ "responding to Petitioner's eleven grounds for relief as set forth in the Decision and Order of September 17, 2021 (ECF No. 17, PageID 939-40)." (ECF No. 26). Respondent did so (ECF Nos. 27, 28). Petitioner was then notified that his amended Traverse was due to be filed by March 14, 2022 (ECF No. 29). On Petitioner's Motion that time was extended to April 14, 2022 (ECF No. 31). Because the Traverse had not been received by two weeks later, April 28, 2022, the Magistrate Judge filed a Report on April 28 (ECF No. 33). The Traverse was received by the Clerk the same

day but after the Report had been filed.  Petitioner has certified that he deposited the Traverse in the mail on April 13 (ECF No. 32, PageID 1914).  The envelope bears the postmark of April 15, 2022. *Id.* at PageID 1915.  The Court has accordingly accepted the Traverse as timely,  withdrawn the original Report (ECF No. 34), and substitutes this Report in its stead.

**Litigation History**

Kamara was indicted on July 2, 2018, by the Union County Grand Jury on seven counts:  (1) possession of cocaine in violation of Ohio Revised Code §  2925.11(A), (C)(4)(e); (2) trafficking in cocaine in violation of Ohio Revised Code § 2925.03(A)(2); (3) trafficking in cocaine in violation of Ohio Revised Code § 2925.03(A)(2), (C)(4)(f); (4) tampering with evidence in violation of Ohio Revised Code § 2921.12(A)(1), (B); (5) obstructing official business in violation of Ohio Revised Code § 2921.31(A), (B); and (6) and (7) identify fraud in violation of Ohio Revised Code § 2913.49(B)(1), (I)(2) and Ohio Revised Code § 2913.49(B)(2), (I)(2), respectively. (Indictment, State Court Record, ECF No. 27, Ex. 1).  On September 7, 2018, a jury convicted Kamara on all counts. *Id.* at Ex. 6.  He was sentenced to an aggregate term of imprisonment of thirteen years.  *Id.* at Ex. 7.

With the assistance of counsel, Kamara appealed to the Ohio Third District Court of Appeals. That court affirmed the conviction, but remanded for resentencing upon finding the State's objection to merging the drug convictions was well taken.  *State v. Kamara,* 2019-Ohio-5385 (Ohio App. 3d Dist. Dec. 30, 2019).  The Supreme Court of Ohio declined jurisdiction over Kamara's appeal.  *State v. Kamara*, 158 Ohio St. 3d 1467 (2020).

Upon remand, Kamara was re-sentenced to an aggregate fifteen years of incarceration (State Court Record, ECF No. 27, Ex. 17).  The Third District affirmed.  *State v. Kamara*, Ohio App. 3d Dist.

(Nov.22, 2021)(Slip opinion at State Court Record ECF No. 27, Ex. 22).  Kamara did not appeal to the

Supreme Court of Ohio.

Kamara pleads the following grounds for relief:

> **Ground One**: Appellant's right to a fair trial was violated by the trial court decision to allow the State to use other act bad evidence violating the Petitioner's 14th Amendment right to due process.
>
> **Supporting Facts:** The State introduced other bad act evidence of the Petitioner being a major drug trafficker. The State introduced unsubstantiated claims the Petitioner sold drugs for a six-month period. The difference between pleading and proof can destroy a defendant's substantial right to be tried only on the charges presented in the indictment.
>
> **Ground Two**: Petitioner's Due Process rights under the Fifth and Fourteenth Amendments to the U.S. Constitution were violated as evidence was insufficient to support Identify [sic] Fraud.
>
> **Supporting Facts:** The face of the record is insufficient to conclude the Petitioner used someone's identity without expressed or implied consent. Thus the State failed to prove all elements of the crime charged.
>
> **Ground Three**: The Third District Appellate Court violated the Petitioner's 5th, 6th and Fourteenth Amendment rights to the U.S. Constitution by violating the Petitioner's due process, double jeopardy and jury trial rights.
>
> **Supporting Facts:** The State Appellate Court ordered the Petitioner to be re-sentenced because counts two and three did not merge and are not allied offenses, reversing due to a cross-appeal by the State.
>
> **Ground Four**: The trial court erred in failing to merge the tampering with evidence charge with the possession of cocaine charge. This violates the Double Jeopardy Clause of the United States Constitution and violates the Fifth and Fourteenth Amendments to the United States Constitution.
>
> **Supporting Facts:** The possession of cocaine charge was run consecutive with the tampering with evidence charge. The facts dictated merger.
>
> **Ground Five** Counsel failed to request a merger of the possession of cocaine charge and the tampering with evidence charge resulting

in ineffective assistance of counsel violating the Petitioner's Sixth and Fourteenth Amendment Rights to the United States Constitution. 1

**Supporting Facts:** Counsel failed to request the above charges be merged.

**Ground Six**: The State failed to prove the petitioner was trafficking in crack cocaine. The conviction violated the Petitioner's right to due process found in the Fifth and Fourteenth Amendments to the United States Constitution.

**Supporting Facts:** The State never proved the Petitioner handed his co-defendant anything.

**Ground Seven**: The State failed to prove the (Appellant) Petitioner was trafficking in powder cocaine. This violates the Petitioner's right to due process found in the Fifth and Fourteenth Amendments to the United States Constitution.

**Supporting Facts:** The State never proved the Petitioner handed his co-defendant anything.

**Ground Eight**: The State failed to prove the (Appellant) Petitioner knowingly possessed cocaine. This violates the Petitioner's right to due process found in the Fifth and Fourteenth Amendments to the United States Constitution.

**Supporting Facts:** The State failed to prove the Petitioner knowingly possessed the cocaine from Ms. McWilliams hair.

**Ground Nine**: The State knowingly and intentionally misled the jury into believing the Appellant Petition[er] sold crack and powder cocaine. This violated the Appellant's right to due process and a fair trial found in the Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

**Supporting Facts:** The State repeatedly told the jury the Petitioner sold cocaine to his co-defendant when the Petitioner never had a transaction with his co-defendant.

**Ground Ten**: Trial counsel was ineffective for allowing the State to put forth untrue assertions thus failing to preserve these errors by failing to object. This violated the Petitioner's right to the effective assistance of counsel and a fair trial also due process. This violated

the Petitioner's Fifth, Sixth, and Fourteenth Amendment rights to the United States Constitution.

**Supporting Facts:** Counsel allowed the State to continually claim the Petitioner handed and sold his co-defendant the cocaine when he did nothing of the sort.

**Ground Eleven:**  Counsel was ineffective for allowing an all[-]white jury pool when the defendant was black being tried for a crack cocaine charge in a rural county. This violated the Petitioner['s] right to effective assistance of counsel, a fair trial, and due process found in the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

**Supporting Facts:** These are found in the Ground Eight but for clarification purposes the Appellant/Petitioner had an all-white jury pool and he is black.  That is not ok and should not have been ok with counsel.

(ECF No. 17, PageID 939-940).

# Analysis

## Ground One:  Denial of a Fair Trial:  Use of Other Bad Act Evidence

In his First Ground for Relief, Kamara asserts he was denied his Fourteenth Amendment right to a fair trial by the State's use of prior bad act evidence, in particular that he had been a major drug dealer for a six-month period (Petition, ECF No. 1, PageID 5).  Kamara presented this claim to the Third District Court of Appeals on his first direct appeal as his First Assignment of Error as follows:  "Kamara's right to a fair trial was denied by the trial court's decision to allow the State to use other acts evidence that Kamara was a major drug trafficker for a six-month period, in violation of Evid.R. 403**,** 404**,** and the Due Process Clause."  The Third District decided this claim as follows:

{¶9} In his first assignment of error, Kamara argues that the trial court erred by permitting the State to present "other acts" evidence. Specifically, Kamara objects to McWilliams's testimony that she and Kamara had engaged in drug trafficking for a six-month period prior to Kamara's arrest on the present case. Moreover, Kamara argues that the State did not provide him sufficient notice that it intended to use the "other acts" evidence at trial.

{¶10} " 'Generally, evidence which tends to show that the accused has committed other crimes or acts independent of the crime for which he stands trial is not admissible to prove a defendant's character or that the defendant acted in conformity therewith.' " *State v. Wendel*, 3d Dist. Union No. 14-16-08, 2016-Ohio-7915, ¶ 21, quoting *State v. Hawthorne*, 7th Dist. Columbiana No. 04 CO 56, 2005-Ohio-6779, ¶ 24, citing *State v. Elliott*, 91 Ohio App.3d 763, 770 (3d Dist.1993) and Evid.R. 404. " ' "Evidence of other crimes, wrongs, or acts" ' " ' "may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." ' " *Id.*, quoting *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, ¶ 15, quoting Evid.R. 404(B). *See also* R.C. 2945.59.

{¶11} "In *State v. Williams*, the Supreme Court of Ohio set forth the three-step analysis trial courts should conduct in determining whether 'other acts' evidence is admissible under Evid.R.404(B)." *Wendel* at ¶ 22, citing *Williams* at ¶ 19-20. "'The first step is to consider whether the other acts evidence is relevant to making any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence.' " *Id.*, quoting *Williams* at ¶ 20, citing Evid.R. 401. "'The next step is to consider whether evidence of the other crimes, wrongs, or acts is presented to prove the character of the accused in order to show activity in conformity therewith or whether the other acts evidence is presented for a legitimate purpose, such as those stated in Evid.R. 404(B).' " *Id.*, quoting *Williams* at ¶ 20. " 'The third step is to consider whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice.' " *Id.*, quoting *Williams* at ¶ 20, citing Evid.R. 403.

{¶12} "Generally, '[a] trial court is given broad discretion in admitting and excluding evidence, including "other bad acts" evidence.' " *Id.* at ¶ 23, quoting *State v. Williams*, 7th Dist. Jefferson No. 11 JE 7, 2013-Ohio-2314, ¶ 7, citing *State v. Maurer*, 15 Ohio St.3d 239, 265 (1984). "Thus, a reviewing court will not reverse a trial court's evidentiary ruling absent an abuse of discretion that materially prejudices the affected party." *State v. Glenn-Coulverson*,

10th Dist. Franklin No. 16AP-265, 2017-Ohio-2671, ¶ 24, citing *State v. Issa*, 93 Ohio St.3d 49, 64 (2001). An abuse of discretion implies that the trial court acted unreasonably, arbitrarily, or unconscionably. *State v. Adams*, 62 Ohio St.2d 151, 157 (1980).

{¶13} We conclude that the trial court did not abuse its discretion by admitting "other acts" evidence. The "other acts" evidence to which Kamara objects is evidence of his drug trafficking activities from 2017 until the date of arrest. At trial, McWilliams testified that on May 22, 2018, she and her husband met with Kamara and Kamara's cousin, Tito, in Columbus. (Sept. 7, 2018 Tr. at 102, 104-107, 111-112). While in Columbus, Kamara handed Tito two separate plastic bags—one containing powder cocaine and one containing crack cocaine. (*Id.* at 105, 116-118). McWilliams testified that Tito handed the plastic bags to McWilliams who put the bag of powder cocaine in her hair and the bag of crack cocaine in her vaginal canal. (*Id.*). While McWilliams and Kamara were traveling from Columbus to Bellefontaine, they were stopped by Sergeant Himes and the instant criminal charges followed therefrom. (*Id.* at 101-102, 122).

{¶14} McWilliams further testified that she traveled to Columbus from Bellefontaine to pick up powder cocaine from Kamara multiple times a week from November 2017 to May 22, 2018. (*Id.* at 118-121, 136-138). McWilliams testified that she had carried cocaine obtained from Kamara on her person "quite a few times" while traveling with Kamara to Bellefontaine, where she and her husband sold the cocaine. (*Id.*). McWilliams and her husband then gave the money they received from selling the drugs to Kamara. (*Id.* at 141). McWilliams testified that in exchange for carrying the cocaine for Kamara, she received a portion of the drugs for her personal use. (*Id.* at 135-136).

{¶15} Under the first step of the *Williams* analysis, the evidence that Kamara had engaged in drug trafficking on other occasions is relevant in that this evidence makes it more probable that Kamara trafficked drugs in this case. *See State v. Jones*, 3d Dist. Logan No. 8-16-18, 2017-Ohio-4351, ¶ 11 (concluding that "evidence that Jones was convicted of forgery * * * for passing bad checks is relevant to making it more probable that Jones committed the forgeries in this case"), citing *State v. Regan*, 5th Dist. Delaware No. 13 CAA 08 0067, 2014-Ohio-3797, ¶ 19; *State v. Ranes*, 3d Dist. Putnam No. 12-15-03, 2016-Ohio-448, ¶ 20 (finding that evidence of Ranes's past conviction for illegal assembly or possession of chemicals for the manufacture of drugs "had a tendency to make more probable that Ranes had criminal intent when purchasing and

7

collecting items such as pseudoephedrine"). According to McWilliams's testimony, Kamara's actions on the day of his arrest were consistent with the other occasions in which Kamara trafficked drugs. Further, McWilliams's testimony undermines Kamara's defense that he was unaware that McWilliams was carrying drugs on her person.

{¶16} Concerning the second step of the *Williams* analysis, McWilliams's testimony regarding other instances of drug trafficking demonstrate intent, knowledge, and plan. *See* Evid.R. 404(B). According to McWilliams's testimony, her and Kamara's actions on May 22, 2018 were part of the same scheme that the pair participated in for approximately six months. Moreover, McWilliams's testimony that her relationship with Kamara was predicated on their drug-trafficking activities undermines Kamara's defense that he was unaware that McWilliams was carrying drugs on her person. McWilliams's testimony of her and Kamara's drug scheme also demonstrates the pair's purpose for traveling from Columbus to Bellefontaine on May 22, 2018. *See State v. Moorer*, 3d Dist. Seneca No. 13-12-22, 2013-Ohio-650, ¶ 25.

{¶17} Finally, the third and final step of the *Williams* analysis involves a consideration of whether the probative value of the "other-acts" evidence is substantially outweighed by the danger of unfair prejudice. *Wendel*, 2016-Ohio-7915, at ¶ 28. Here, the trial court gave the jury the following limiting instruction before McWilliams testified to her and Kamara's ongoing drug-trafficking scheme:

> I want to give you an instruction that you may hear evidence from this point on by this witness that talks about other bad acts. * * * [T]his is what we call other acts evidence and there's [sic] rules that allow that evidence to come in. We do not, however, in this Court or any other Court in the State convict somebody because of bad character. So, character isn't at issue here. Character of the defendant isn't at issue when we're talking about any other acts that you might hear about from this point on or even heretofore, if you believe that you've heard something heretofore that's not directly related to what happened on this day and at the time.

> The testimony isn't being admitted to show the defendant's character or that he acted in conformity with that character. It's being admitted to prove other elements of the offense[,] such as * * * proof of motive, opportunity, intent,

8

> preparation, plan, knowledge, identity or absence of mistake or accident.
>
> \* \* \*
>
> I want you to consider that when you're evaluating the testimony before the Court by this witness.

(Sept. 7, 2018 Tr. at 113-114).

> Thus, McWilliams's testimony that she and Kamara had engaged in a drug-trafficking scheme for approximately six months " 'is not unduly prejudicial "because the trial court instructed the jury that this evidence could not be considered to show that [Kamara] acted in conformity with a character trait." ' " *Jones*, 2017-Ohio-4351, at ¶ 13, quoting *Wendel* at ¶ 28, quoting *Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, at ¶ 24. (*See* Sept. 7, 2018 Tr. at 113-114). The trial court's limiting instruction lessened any prejudicial effect of McWilliams's testimony that she and Kamara had been engaged in a drug-trafficking scheme for approximately six months prior to Kamara's arrest for the instant offenses. As detailed in the discussion of the first two steps of the *Williams* analysis, McWilliams's testimony of her and Kamara's drug activity was relevant to establish McWilliams's relationship with Kamara and was relevant to establishing intent, knowledge, and plan. Thus, any prejudicial effect did not substantially outweigh the probative value of the evidence. *See Regan*, 2014-Ohio-3797, at ¶ 19. *See also Wendel* at ¶ 28, citing *Williams* at ¶ 24.

*State v. Kamara, supra.*

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 785 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000). Deference is also due under 28 U.S.C. § 2254(d)(2) unless the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings. Kamara presented

his First Assignment of Error as both a federal constitutional claim (fair trial) and an Ohio Evidence

Rules claim.  While the Third District analyzed it largely in terms of the Ohio evidence rules, the

fair trial claim was squarely presented and the decision on that claim is entitled to deference unless

it offends Supreme Court precedent.

Kamara argues this claim in his Traverse in terms of the policy behind the Evidence Rules

constraining the use of prior bad acts, to wit, the risk that a jury will base its finding of guilt upon

a determination that the defendant is of bad character and acted in accordance with that character,

rather than upon the evidence of guilt particular to the case in trial.  See *Old Chief v. United States*,

519 U. S. 172, 180 (1997):

> The principal issue is the scope of a trial judge's discretion under
> Rule 403, which authorizes exclusion of relevant evidence when its
> "probative value is substantially outweighed by the danger of unfair
> prejudice, confusion of the issues, or misleading the jury, or by
> considerations of undue delay, waste of time, or needless
> presentation of cumulative evidence." Fed. Rule Evid. 403. Old
> Chief relies on the danger of unfair prejudice.
>
> The term "unfair prejudice," as to a criminal defendant, speaks to
> the capacity of some concededly relevant evidence to lure the
> factfinder into declaring guilt on a ground different from proof
> specific to the offense charged. See generally 1 J. Weinstein, M.
> Berger, & J. McLaughlin, Weinstein's Evidence P403[03] (1996).

The Third District explained the process worked out by the Ohio courts for evaluating

proffered prior bad acts evidence in *State v. Williams*, 7th Dist. Jefferson No. 11 JE 7, 2013-Ohio-

2314, ¶ 7 and details the trial court's compliance with it in this case.  The prior bad acts of

trafficking drugs with co-defendant McWilliams over a six month period were indeed relevant to

show intent and plan and the relevant jury instruction correctly stated the law, which the jury is

presumed to have followed.

But most importantly this Court does not sit to review whether the Third District was correct

as a matter of Ohio evidence law.  Federal habeas corpus is available only to correct federal constitutional violations.  28 U.S.C. § 2254(a); *Wilson v. Corcoran,* 562 U.S. 1 (2010)*; Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Smith v. Phillips*, 455 U.S. 209 (1982), *Barclay v. Florida,* 463 U.S. 939 (1983).  "[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); see also *Elmendorf v. Taylor*, 23 U.S. (10 Wheat.) 152, 160 (1825)(Marshall C. J.); *Bickham v. Winn*, 888 F.3d 248 (6th Cir. Apr. 23, 2018)(Thapar, J. concurring).  From that perspective, Petitioner's argument that the State's notice of what prior bad acts evidence it would use was defective cannot be reviewed because there is no constitutional requirement for such notice.

Indeed, "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh v. Mitchell,* 329 F.3d 496, 512 (6th Cir. 2003), noting that the Supreme Court refused to reach the issue in *Estelle v. McGuire*. 502 U.S. 62 (1991).

At the end of this first section of the Traverse, Kamara injects a new claim:  that the evidence presented to convict him of engaging in a pattern of corrupt activity was not the evidence on which he was indicted (Traverse, ECF No. 32, PageID 1908-09).  This claim was never fairly presented to the Ohio courts.  Although Kamara claimed denial of due process as part of his First Assignment of Error, that claim related to the use of prior bad acts evidence.  In addition, Kamara never pleaded what amounts to a variance in the evidence claim when he filed in this Court and a Petitioner may not inject a new claim in a traverse. *Jalowiec v. Bradshaw*, 657 F.3d 293 (6th Cir. 2011), *citing Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2005).

11

Because the Third District's decision on the bad acts evidence claim is neither contrary to nor an objectively unreasonable application of clearly established Supreme Court precedent, it is without merit and should be dismissed.

**Ground Two: Insufficient Evidence of Identity Fraud**

In his Second Ground for Relief, Kamara asserts the State presented insufficient evidence to convict him of identity fraud.

An allegation that a verdict was entered upon insufficient evidence states a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia,* 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970); *Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders*, 894 F.2d 792, 794 (6th Cir. 1990)(en banc). In order for a conviction to be constitutionally sound, every element of the crime must be proved beyond a reasonable doubt. *In re Winship*, 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . . This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. at 319; *Smith v. Nagy*, 962 F.3d 192, 205 (6th Cir. 2020) (quoting *Jackson*). This standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* (quoting *Jackson*, 443 U.S. at 324). This rule was recognized in Ohio law at *State v. Jenks*, 61 Ohio St. 3d 259 (1991). Of course, it is state law which determines the elements of offenses; but once the state has adopted the elements, it must

then prove each of them beyond a reasonable doubt. *In re Winship, supra.* A sufficiency challenge should be assessed against the elements of the crime, not against the elements set forth in an erroneous jury instruction. *Musacchio v. United States*, 577 U.S. 237 (2016).

In cases such as Petitioner's challenging the sufficiency of the evidence and filed after enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"), two levels of deference to state decisions are required:

> In an appeal from a denial of habeas relief, in which a petitioner challenges the constitutional sufficiency of the evidence used to convict him, we are thus bound by two layers of deference to groups who might view facts differently than we would. First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. See *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. See 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). In a sufficiency of the evidence habeas corpus case, deference should be given to the trier-of-fact's verdict under *Jackson v. Virginia* and then to the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v. Palmer*, 541 F.3d 652 (6th Cir. 2008); *accord Davis v. Lafler,* 658 F.3d 525, 531 (6th Cir. 2011)(en banc); *Parker v. Matthews*, 567 U.S. 37, 43 (2012). Notably, "a court may sustain a conviction based upon nothing more than circumstantial evidence." *Stewart v. Wolfenbarger,* 595 F.3d 647, 656

(6th Cir. 2010).

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury -- not the court -- to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U. S. 1, ___, 132 S. Ct. 2, 181 L. Ed. 2d 311, 313 (2011) (per curiam). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid.* (quoting *Renico v. Lett*, 559 U. S. ___, ___, 130 S. Ct. 1855, 176 L. Ed. 2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. 650, 651, (2012)(per curiam); *Parker v. Matthews*, 567 U.S. 37, 43 (2012) (per curiam).  The federal courts do not make credibility determinations in reviewing sufficiency of the evidence claims.  *Brooks v. Tennessee,* 626 F.3d 878, 887 (6th Cir. 2010).

Kamara presented this claim as his Second Assignment of Error on direct appeal and the Third District decided it as follows:

> {¶24} In his second assignment of error, Kamara contends that the State failed to present sufficient evidence to support his identity-fraud convictions. Specifically, Kamara argues that the State did not present sufficient evidence to establish that Kamara did not have Gbor's consent to use his identification.

> {¶25} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus, *superseded by state constitutional amendment on other grounds*, *State v. Smith*, 80 Ohio St.3d 89 (1997). Accordingly, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*

14

{¶26} "Circumstantial evidence and direct evidence inherently possess the same probative value and therefore should be subjected to the same standard of proof." *Id.* at paragraph one of the syllabus. "A conviction can be sustained based on circumstantial evidence alone." *State v. Franklin*, 62 Ohio St.3d 118, 124 (1991). "[I]n some instances, certain facts can only be established by circumstantial evidence" and a conviction based thereon "is no less sound than one based on direct evidence." *State v. Smith*, 12th Dist. Butler No. CA2008-03-064, 2009-Ohio-5517, ¶ 80. "If the state 'relies on circumstantial evidence to prove an element of the offense charged, there is no [requirement that the evidence must be] irreconcilable with any reasonable theory of innocence in order to support a conviction[,]' so long as the jury is properly instructed as to the burden of proof, i.e., beyond a reasonable doubt." *State v. Bates*, 6th Dist. Williams No. WM-12-002, 2013-Ohio-1270, ¶ 50, quoting *Jenks* at paragraph one of the syllabus.

R.C. 2913.49(B) provides:

> No person, without the express or implied consent of the other person, shall use, obtain, or possess any personal identifying information of another person with intent to do either of the following:
>
> (1) Hold the person out to be the other person;
>
> (2) Represent the other person's personal identifying information as the person's own personal identifying information.

{¶27} Kamara was convicted of two counts of identity fraud: Count Six concerned Kamara['s] providing Sergeant Himes with Gbor's driver's license during the traffic stop and Count Seven involved Kamara providing the jail staff with Gbor's identifying information during the booking process. (*See* Doc. No. 16). Here, Kamara's sole argument is that the State did not present sufficient evidence that he lacked Gbor's consent to use Gbor's identifying information. Accordingly, we will address only the lack of consent element of the offense.

{¶28} At trial, the State presented the testimony of Sergeant Himes, who testified that after he initiated a traffic stop of a vehicle driven by Kamara, he asked Kamara for his driver's license. (Sept. 6, 2018 Tr. at 92). In response, Kamara produced a driver's license issued to Gbor. (*Id.* at 92-93, 138-139). (*See* State's Ex. 3). Sergeant Himes identified State's Exhibit 3 as the driver's license issued to Gbor that

Kamara presented to him during the traffic stop. (Sept. 6, 2018 Tr. at 138-139). (*See* State's Ex. 3). Sergeant Himes testified that during the booking process, Kamara represented himself as Gbor. (*Id.* at 142).

{¶29} Sergeant Himes identified State's Exhibit 10 as the jail intake form for Kamara that Sergeant Himes completed. (*Id.* at 149-150). (*See* State's Ex. 10). The name of the inmate listed on the form is "Raheem Henry Gbor," which was the name Kamara gave Sergeant Himes to identify himself. (State's Ex. 10); (Sept. 6, 2018 Tr. at 150-151). Moreover, State's Exhibit 10 includes Gbor's social security number, which Sergeant Himes testified that he obtained from the LEADS database. (State's Ex. 10); (Sept. 6, 2018 Tr. at 151-152).

{¶30} Sergeant Himes testified that several days after Kamara's arrest, the patrol post received a phone call from a Raheem Henry Gbor. (Sept. 6, 2018 Tr. at 152). Based on the message, Sergeant Himes testified that he received some information that Gbor was not the individual he arrested on May 22, 2018. (*Id.* at 152-153).

{¶31} Sergeant Himes then contacted the jail and inquired whether the individual who had been booked on May 22, 2018 as "Raheem Gbor" was still incarcerated. (*Id.* at 157). At that time, Sergeant Himes was informed that that individual had been released from jail on bond. (*Id.* at 157-158). Sergeant Himes testified that after receiving the message from Gbor and contacting the jail, he had suspicions that the person he arrested on May 22, 2018 was not actually Gbor. (*Id.*).

{¶32} Next, Sergeant Himes set up an interview at the patrol post with Gbor. (*Id.* at 158). Sergeant Himes testified that Gbor appeared at the patrol post in person and Sergeant Himes obtained a written statement from him. (*Id.*). Following his interview with Gbor, Sergeant Himes reached out to other agencies for assistance in identifying the male that he arrested on May 22, 2018. (*Id.* at 160-162). As a result of his investigation, Sergeant Himes stated that he determined that Gbor is not the person he arrested. (*Id.* at 164).

{¶33} We conclude that the State presented sufficient evidence that Kamara did not have Gbor's consent to use Gbor's identifying information. Sergeant Himes's testimony that he received a message several days after Kamara's arrest from Gbor that caused him to suspect that Gbor was not the individual he arrested, coupled with his testimony that he met with Gbor in-person and obtained a statement from Gbor, support the inference that Gbor did not give Kamara his consent to use his identification. Although the jury was

not able to consider the content of Sergeant Himes's contact with Gbor, the fact that Gbor himself initiated the contact could allow the jury to infer that Gbor was contacting the police because Kamara did not have Gbor's consent to use his identification.

{¶34} Moreover, when viewing the evidence in a light most favorable to the prosecution, when Kamara initially gave Sergeant Himes Gbor's identification, Kamara knew that he was in a vehicle containing marijuana, crack cocaine, and powder cocaine. In fact, he was in the process of attempting to ingest the marijuana as he gave Sergeant Himes Gbor's identification. Kamara continued to hold himself out as Gbor even when he was in jail facing felony drug charges, and he went as far as to post bond under Gbor's name. The serious nature of the charges against Kamara coupled with Gbor's voluntary contact with Sergeant Himes could allow the jury to infer that Kamara did not have Gbor's consent to use his identification. *See State v. Gordon*, 9th Dist. Summit No. 28331, 2017-Ohio-7147, ¶ 26 (finding sufficient evidence to support an identity fraud conviction where the victim did not testify); *State v. Seagraves*, 5th Dist. Delaware No. 09 CAA 04 0033, 2010-Ohio-308, ¶ 24 (finding that the State established the lack of consent element of a theft charge through circumstantial evidence); *Bates*, 2013-Ohio-1270, at ¶ 50. Thus, viewing the evidence in a light most favorable to the State, a rational trier of fact could have found that the State proved the lack of consent element of identify fraud.

{¶35} Kamara's second assignment of error is overruled.

*State v. Kamara, supra.*

Kamara's argument on this claim on direct appeal was essentially that there was no direct evidence from Gbor that he did not give Kamara consent to identify himself to arresting police officers and jail personnel as Gbor.  He reprises that argument in his Traverse (ECF No. 32, PageID 1910-11).  The Third District did not purport to rely on any direct evidence that Kamara was not Gbor, but found the circumstantial evidence sufficient.

Ohio Revised Code § 2913.49(B) provides

(B) No person, without the express or implied consent of the other person, shall use, obtain, or possess any personal identifying information of another person with intent to do either of the following:

17

(1) Hold the person out to be the other person;

(2) Represent the other person's personal identifying information as the person's own personal identifying information.

Kamara was indicted on two counts of identity fraud, Count 6 in violation of Ohio Revised Code § 2913.49 (B)(1) and Count 7 in violation of Ohio Revised Code § 2913.49 (B)(2).

Federal law parallels Ohio law in holding that circumstantial evidence can be sufficient to prove guilt.  "Circumstantial evidence alone is sufficient to support a conviction, and it is not necessary for the evidence to exclude every reasonable hypothesis except that of guilt." *United States v. Ramirez*, 635 F.3d 249, 256 (6th Cir. 2011), quoting *United States v. Stone*, 748 F.2d 361, 362 (6th Cir. 1993); *United States v. Wettstain,* 618 F.3d 577, 583 (6th Cir. 2010); *United States v. McAuliffe,* 490 F.3d 526, 537 (6th Cir. 2007); *United States v. Kelley,* 461 F.3d 817, 825 (6th  Cir. 2006); *United States v. Reed,* 167 F.3d 984, 992 (6th Cir. 1999); *United States v. Beddow,* 957 F.2d 1330, 1334 (6th Cir. 1992).  As Justice Brennan wrote: "[D]irect evidence of a fact is not required. Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence. *Michalic v. Cleveland Tankers, Inc.,* 364 U.S. 325, 330 (1960)(Brennan), citing *Rogers* v. *Missouri Pacific R. Co*., 352 U.S. 500, 508, n. 17(1957).

To cite an example familiar to everyone, Americans watching television on the morning of September 11, 2001, probably believed the collision of the first plane with the North Tower of the World Trade Center was a horrible accident, but when the second plane hit the South Tower, virtually everyone drew the quite reasonable inference that the collisions were part of an attack, that the collisions were deliberate.  To draw the parallels, we know that Gasumu Kamara is not Raheem Henry Gbor, that Kamara presented Gbor's driver's license when stopped by police and to identify himself at the jail, that Kamara had a motive to misidentify himself to avoid liability

for the drugs in the vehicle. We have no direct testimony from Gbor that he did not give Kamara permission to use his driver's license, but it is part of our common experience that drivers do not lend their licenses to others or give permission to others to claim to be the licensed driver when stopped by the police and therefore the inference that Gbor did not is completely reasonable. Kamara presents no conflicting evidence. He presumably knows why he had Gbor's license, but he did not testify. Of course the jury was not permitted to infer Kamara's guilt from the fact that he did not take the stand at all, but it was not required to infer his innocence from his unexplained possession and presentation of Gbor's license.

There was no direct evidence of Gbor's lack of consent, but the circumstantial evidence was strong and there was no countervailing evidence that Gbor had given consent. The Third District's decision is therefore a reasonable application of *Jackson v. Virginia* and is entitled to deference. Kamara's Second Ground for Relief should be dismissed.


**Ground Three: Violation of the Double Jeopardy Clause**


In his Third Ground for Relief, Kamara asserts his rights under the Double Jeopardy Clause were violated when the Third District ordered that he be sentenced separately for the two cocaine trafficking convictions, Counts Two and Three. On direct appeal, Kamara claimed convicting him of both offenses would violate both the Double Jeopardy Clause and Ohio Revised Code § 2941.25, essentially arguing they were the "same offense." (Appellant's Reply Brief, State Court Record, ECF No. 27, Ex. 11, PageID 1112, et seq.) The Third District wrote:

> {¶41} The State argues that the trial court erred by merging Counts Two and Three for sentencing because Kamara's actions of packaging two different forms of cocaine, which were different in

quantity, form, and the method in which they are used, demonstrate a separate animus.

{¶42} Conversely, Kamara contends that because crack cocaine and powder cocaine are two forms of the same drug and he handed the drugs over simultaneously, he should have only been convicted of one count of drug trafficking.

*State v. Kamara, supra.* The Third District found these were not allied offenses of similar import because

> First, the powder cocaine and crack cocaine were packaged separately. The packages also contained two different quantities of cocaine. Additionally, the two packages were found on different locations on McWilliams's body. Moreover, the two packages contained different forms of the substance to be purchased by different users. McWilliams testified that Kamara provided her with crack cocaine in addition to the powder cocaine to fulfill a special order request from McWilliams's customers.

*Id.* at ¶ 45

The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution affords a defendant three basic protections:

> It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.

*Brown v. Ohio*, 432 U.S. 161, 165 (1977), quoting *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969). The Double Jeopardy Clause was held to be applicable to the States through the Fourteenth Amendment in *Benton v. Maryland*, 395 U.S. 784, 794 (1969).

The test for whether two offenses constitute the same offense for Double Jeopardy purposes is "whether each offense contains an element not contained in the other." *United States v. Dixon*, 509 U.S. 688, 696 (1993); *Blockburger v. United States*, 284 U.S. 299, 304 (1932).

An Ohio court of appeals decision of a double jeopardy claim which is limited to the

application of Ohio Rev. Code § 2941.25 is entirely dispositive of the federal double jeopardy claim. *Jackson v. Smith*, 745 F.3d 206, 210 (6th Cir. 2014), citing *State v. Rance*, 85 Ohio St. 3d 632, 705 (1999), *overruled by State v. Johnson*, 128 Ohio St. 3d 153 (2010).

> What determines whether the constitutional prohibition against multiple punishments has been violated is the state legislature's intent concerning punishment.  Specifically, [w]ith respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended.

*Jackson v. Smith*, 745 F.3d 206, 211 (6th Cir. 2014), quoting *Missouri v. Hunter*, 459 U.S. 359, 366 (1983)(internal quotation marks omitted).  Ohio Rev. Code § 2941.25, and not the *Blockburger* test determines whether a person has been punished twice for the same offense under Ohio law in violation of the federal Double Jeopardy Clause.  *Jackson v. Smith*, 745 F.3d 206, 213 (6th Cir. 2014).

Trafficking powder cocaine and trafficking crack cocaine are different offenses.  The two substances are chemically different and are consumed in different ways.  But the key question on this ground for relief is whether the General Assembly intended that they be punished separately, and the Third District has determined that it did.  That conclusion is binding on this Court. *Bradshaw v. Richey*, 546 U.S. 74 (2005).

In his Traverse, Kamara argues not that these were the same offense, but that the evidence shows McWilliams obtained the drugs from her husband (ECF No. 32, PageID 1912, with a place for a transcript reference but with no reference inserted).  That simply does not speak to the Third District's Double Jeopardy conclusion.  This argument also contravenes the explicit factual finding of the Third District that Kamara removed the bag of powder cocaine from McWilliams' hair and tossed it on the floor, enabling her to kick it under the seat. *State v. Kamara, supra,* ¶ 3.

The Third District's decision is not an unreasonable application of Supreme Court precedent on what constitutes multiple offenses for Double Jeopardy cases. Ground Three for Relief should therefore be dismissed.

**Procedural Default**

Respondent asserts that Grounds Four through Eleven were presented to the Ohio courts in Kamara's appeal from the resentencing decisions and that they are all procedurally defaulted by Kamara's failure to appeal to the Supreme Court of Ohio from that second appellate decision by the Third District. In response Kamara concedes that he is only contending for the first three grounds for relief (Traverse, ECF No. 32. PageID 1901).

The procedural default doctrine in habeas corpus is described by the Supreme Court as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000). That is, a petitioner may not raise on federal habeas a federal constitutional rights claim he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107, 110 (1982). "Absent cause and prejudice, 'a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review.'" *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000), quoting *Gravley v.*

*Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle*, 456 U.S. at 110; *Wainwright*, 433 U.S. at 87.

> [A] federal court may not review federal claims that were procedurally defaulted in state court—that is, claims that the state court denied based on an adequate and independent state procedural rule. E.g., *Beard v. Kindler*, 558 U.S. 53, 55, 130 S.Ct. 612, 175 L.Ed.2d 417 (2009). This is an important "corollary" to the exhaustion requirement. *Dretke v. Haley*, 541 U.S. 386, 392, 124 S.Ct. 1847, 158 L.Ed. d 659 (2004). "Just as in those cases in which a state prisoner fails to exhaust state remedies, a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address" the merits of "those claims in the first instance." *Coleman* [*v. Thompson*], 501 U.S. [722,] 731-732, 111 S.Ct. 2546, 115 L.Ed.2d 640 [(1991)]. The procedural default doctrine thus advances the same comity, finality, and federalism interests advanced by the exhaustion doctrine. See *McCleskey v. Zant*, 499 U.S. 467, 493, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991).

*Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017). "[A] federal court may not review federal claims that were procedurally defaulted in state courts." *Theriot v. Vashaw*, 982 F.3d 999 (6th Cir. 2020), citing *Maslonka v. Hoffner*, 900 F.3d 269, 276 (6th Cir. 2018) (alteration in original) (quoting *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017)).

The Sixth Circuit Court of Appeals requires a four-part analysis when the State alleges a habeas claim is precluded by procedural default. *Barton v. Warden, S. Ohio Corr. Facility,* 786 F.3d 450, 464 (6th Cir. 2015), *Guilmette v. Howes,* 624 F.3d 286, 290 (6th Cir. 2010)(*en banc*); *Eley v. Bagley*, 604 F.3d 958, 965 (6th Cir. 2010); *Reynolds v. Berry*, 146 F.3d 345, 347-48 (6th Cir. 1998), *citing Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *accord Lott v. Coyle*, 261 F.3d 594, 601-02 (6th Cir. 2001); *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001).

> First the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.
>
> . . . .

23

> Second, the court must decide whether the state courts actually enforced the state procedural sanction, citing *County Court of Ulster County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).

> Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.

> Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); accord, *Hartman v. Bagley,* 492 F.3d 347, 357 (6th Cir. 2007), *quoting Monzo v. Edwards*, 281 F.3d 568, 576 (6th Cir. 2002).

Ohio has a relevant procedural rule:  a notice of appeal to the Supreme Court of Ohio must be filed within forty-five days of judgment in the Court of Appeals.  Here the Third District affirmed on November 22, 2021; more than forty-five days have elapsed since then; and Kamrara has not filed an appeal.  The Sixth Circuit has held the forty-five days limit on appeal is an adequate and independent state procedural ground of decision.  *Bonilla v. Hurley,* 370 F.3d 494, 497 (6th Cir. 2004).  Kamara has not shown any excusing cause and resulting prejudice.  Therefore Grounds Four through Eleven should be dismissed.

**Conclusion**

Based on the foregoing analysis, the Magistrate Judge respectfully recommends that the Petition as amended be dismissed with prejudice.  Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability

and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.


April 28, 2022.

s/ *Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS


Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Because this document is being served by mail, three days are added under Fed.R.Civ.P. 6, but service is complete when the document is mailed, not when it is received. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. #